UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Bank National Association, | Civil File No._____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| American Suzuki Motor Corporation, | |
| Defendant. | |

Plaintiff U.S. Bank National Association ("U.S. Bank"), as and for its Complaint against defendant American Suzuki Motor Corporation ("Suzuki"), states and alleges as follows:

This is an action for breach of contract. In 2008, U.S. Bank re-financed portions of a fleet of Suzuki vehicles purchased by a Denny Hecker-owned entity. In connection with that transaction, Suzuki consented to the transfer to U.S. Bank of the obligations Suzuki owed to that Hecker entity. Now it has refused to perform those obligations, leaving U.S. Bank with losses of not less than $1,094,593.21.

## PARTIES

1. U.S. Bank is a national banking association with its headquarters in Minneapolis, Minnesota. U.S. Bank is in the business of, among other things, commercial lending to finance fleets of leased automobiles.

2. Suzuki is a California corporation with its principal place of business in Brea, California. Suzuki is in the business of selling automobiles through dealers.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the parties because complete diversity exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and because the Defendant is subject to this Court's personal jurisdiction.

## FACTS

5. In or about late 2007, Rosedale Dodge, Inc. ("Rosedale"), an entity owned by Dennis Hecker, purchased approximately 2,000 model-year 2008 vehicles from Suzuki for lease to Hecker-related entities, including Advantage Rent-a-Car ("Advantage"). Rosedale borrowed the money to finance that purchase from Chrysler Financial, Inc.

6. In connection with its purchases of those vehicles, Rosedale executed various agreements, including the American Suzuki Motor Corporation 100% Guaranteed Depreciation Program Rules (the "Suzuki Agreement"). A true copy of the Suzuki Agreement is attached as Exhibit A. As was typical for car manufacturers, Suzuki agreed to guarantee that the vehicles would have at least a certain resale value at the end of their lease term. The Suzuki Agreement set forth the guaranteed depreciation amounts Suzuki would pay for eligible Suzuki vehicles once Advantage took the vehicles out of active lease service.

7. The guaranteed depreciation amounts equaled the capitalized cost of the vehicle minus the agreed-upon depreciation for each vehicle. The capitalized cost corresponded to the amount actually paid by Rosedale to Suzuki, net of dealer incentives (which were retained by Rosedale), and the agreed-upon depreciation was based upon a rate that differed depending on the vehicle model.

8. As it turned out, Hecker perpetrated a fraud on Chrysler Financial by misrepresenting Rosedale's capitalized cost for each vehicle to include the dealer incentives. As a result, Chrysler Financial lent Rosedale more money per vehicle than Rosedale actually paid to Suzuki, and more than the amount that was expected to be covered by lease payments received by Rosedale, plus Suzuki's guaranteed depreciation amounts. Within a few months, Chrysler Financial discovered this fraud and demanded that Hecker pay off the loan.

9. Hecker then contacted U.S. Bank to seek refinancing of his Chrysler Financial obligations. Hecker initially requested approximately $10 million from U.S. Bank to refinance 385 of the Suzuki vehicles originally financed by Chrysler Financial. The amount requested was based on the same fraudulently inflated capitalized cost used to obtain the initial financing from Chrysler Financial.

10. Hecker did not disclose to U.S. Bank his receipt of the fleet incentives from Suzuki or his inclusion of the amount of those fleet incentives in the fraudulently inflated capitalized cost of the vehicles. Nor did he disclose the reason for Chrysler Financial's demand to be taken out of its loan. Rather, Hecker explained that he was seeking

replacement financing because Chrysler Financial had decided to suspend financing of all non-Chrysler vehicles.

11. U.S. Bank agreed to refinance the Suzuki vehicles, at the fraudulently inflated capitalized cost levels for each vehicle as reflected in information provided by Hecker and Chrysler. U.S. Bank did so through Walden Fleet Services II, Inc. ("Walden"), another Hecker fleet leasing entity with which U.S. Bank already had a lending relationship.

12. As part of that financing transaction, on April 15, 2008, Rosedale, Walden and Suzuki entered into an Assignment of Proceeds of American Suzuki Motor Corporation 100% Guaranteed Depreciation Program (the "Assignment of Proceeds"), by which Rosedale and Walden assigned to U.S. Bank their interest in any guaranteed depreciation amounts that might become due under the Suzuki Agreement, "solely for vehicles financed by" U.S. Bank. A true copy of the Assignment of Proceeds is attached as Exhibit B.

13. In or about August 2008, Hecker requested funding from U.S. Bank for the refinance of an additional 540 of the Suzuki vehicles originally financed by Chrysler Financial. U.S. Bank agreed to provide the requested refinancing, again based on the fraudulently inflated capitalized cost levels Chrysler Financial had financed.

14. As part of that transaction, Rosedale and Walden executed an Assignment and Transfer of Contract effective September 18, 2008 (the "Assignment and Transfer"), by which Rosedale assigned to Walden its interest in any guaranteed depreciation amounts that might become due under the Suzuki Agreement, but "only with respect" to

the 540 Suzuki vehicles to be refinanced by U.S. Bank, which were identified on Exhibit A to the Assignment and Transfer. Suzuki specifically consented to the Assignment and Transfer, a true copy of which is attached as Exhibit C.

15. By assigning its rights under the Suzuki Agreement to Walden with respect to *specific* vehicles (i.e., those vehicles refinanced by U.S. Bank), Rosedale effected a partial assignment of the Suzuki Agreement and created two separate agreements, one between Suzuki and Rosedale, and the other between Suzuki and Walden. By virtue of its consent to the partial assignment, Suzuki cannot offset amounts due from Rosedale under the Suzuki Agreement against amounts owed to Walden under the Suzuki Agreement.

16. Walden later defaulted on the U.S. Bank loans, leaving U.S. Bank with substantial losses based on its having lent amounts per vehicle well above the true capitalized costs. Following such default, Walden surrendered its rights under the Suzuki Agreement to U.S. Bank pursuant to a Voluntary Surrender Agreement dated as of May 26, 2009 (as amended, the "VSA"). A true copy of the VSA is attached as Exhibit D.

17. The vehicles U.S. Bank financed were sold at auction at prices that triggered Suzuki's obligation to pay guaranteed depreciation amounts to U.S. Bank. Suzuki has underpaid its obligations to U.S. Bank, as secured party of Walden, by approximately $1,094,593.21. A true copy of a list detailing the unpaid amount owed for each vehicle is attached as Exhibit E.

18. When it consented to the Assignment of Proceeds, and later, the Assignment and Transfer, Suzuki understood that all rights and obligations with respect to the specific vehicles assigned to Walden were owned and owed by an entity separate from Rosedale. It also knew that U.S. Bank was relying on those consents in agreeing to lend on the subject vehicles.

19. U.S. Bank has notified Suzuki of the guaranteed depreciation amounts due and owing to U.S. Bank and demanded that Suzuki pay that debt.

20. Suzuki declined the demand as to all but a miniscule portion of the losses and even as to those has not made payment.

## COUNT I
### (Breach of Contract)

21. U.S. Bank realleges Paragraphs 1-20.

22. The Suzuki Agreement is a valid and enforceable contract.

23. Rosedale and Walden fully performed their obligations under the Suzuki Agreement with respect to those vehicles U.S. Bank refinanced.

24. By virtue of the VSA, U.S. Bank owns Walden's rights under the Suzuki Agreement with respect to the specific vehicles referenced in the Assignment of Proceeds and the Assignment of Transfer. U.S. Bank accordingly has the right to receive the guaranteed depreciation amounts due under the Suzuki Agreement with respect to those specific vehicles.

25. In accordance with the terms of the Suzuki Agreement, the guaranteed depreciation amounts on the vehicles in question due and owing total approximately $1,094,593.21. Those amounts are not subject to any contractual right of offset.

26. Suzuki's refusal to pay the guaranteed depreciation amounts and any other damages due and owing on those vehicles constitutes a breach of the Suzuki Agreement.

27. Suzuki's breach has proximately caused U.S. Bank damages in excess of $50,000.

WHEREFORE, U.S. Bank respectfully requests that the Court enter judgment in its favor:

A. Awarding it damages in excess of $50,000;

B. Awarding it pre-judgment interest and costs, together with, to the extent permitted by law, attorneys' fees; and

C. Awarding such other and further relief as the Court deems just and equitable.

Dated: March 16, 2011

DORSEY & WHITNEY LLP

By /s/ James K. Langdon
James K. Langdon #0171931
langdon.jim@dorsey.com
Erin Davenport #0388845
davenport.erin@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Plaintiff
U.S. Bank National Association